## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN & OUT CONSTRUCTION AND REMODELING, LLC, | ) ) ) |
| Plaintiff, | ) Case No. 25-CV-343-GLJ ) |
| v. | ) ) |
| THIRD COAST INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff filed its action on or around September 24, 2025 in Pittsburg County District Court, State of Oklahoma, alleging breach of duty of good faith and fair dealing. *See* Docket No. 2, Ex. 4. The case was subsequently removed to this Court. *See* Docket No. 2. For the reasons detailed herein, the Court finds Defendant's Motion for Summary Judgment and Brief in Support [Docket No.16] is GRANTED.

### I.    BACKGROUND

In May 2024, Plaintiff agreed to perform work on Timothy and Misty Fox's home in McAlister, Oklahoma. *See* Docket No. 16, Undisputed Material Facts ¶ 3. On May 30, 2024, Plaintiff's workers began the work by removing the shingles from the back half of the Fox's roof, including removing or loosening certain vents and leaving a 6-inch gap on the roof's ridge. *Id.*, ¶ 7. Plaintiff did not remove the felt underlayment under the shingles.

1

*See* Docket No. 16, Ex. 6 at p. 1.  Around noon Plaintiff's workers left the Fox's home to go to lunch but did not cover the exposed roof/vents with any tarp or other protective covering.  *See* Docket No. 16, Undisputed Material Facts ¶ 7.  While Plaintiff's workers were at lunch, it began raining at the Fox's home and rain water entered the home.  *Id*. Plaintiff's workers returned to the Fox's home and covered the exposed roof with a tarp. *Id*.  Carlos Gonzales, Plaintiff's owner, noticed water intruded into the Fox's home through the loosened or removed vents.  *Id*.; Docket No 16, Ex. 5 at p. 23, ln. 5 – p. 24, ln. 5. Plaintiff subsequently retained a mitigation company to perform water mitigation.  *See* Docket No. 16, Undisputed Material Facts ¶ 7.  On June 5, 2024, Plaintiff completed replacing the Fox's roof.  *Id*., ¶ 9.

Plaintiff notified Defendant of its claim and Defendant acknowledged such notice on June 3, 2024.  *See* Docket No. 16, Undisputed Material Facts ¶ 4.  Michael O'Dea, an independent adjuster, investigated the claim and on June 26, 2024, provided a report to Golden State Claims Adjusters, a claims administrator for Defendant.  *Id*., ¶ 5.  Mr. O'Dea met with Mrs. Fox and interviewed Mr. Gonzalez as part of his investigation.  *See* Docket No. 19, Ex. 3.  On July 2, 2024, Golden State notified Plaintiff that Defendant had no duty to defend and/or indemnify Plaintiff for the claim because of the "Open Structure 'Water' Damage" exclusion to Plaintiff's insurance policy with Defendant.  *See* Docket No. 16, Ex. 6, pp. 4-5.   On or about August 6, 2024, counsel for Plaintiff wrote to Karen Booth of Golden State, notifying that the Fox's had retained counsel and made demand on Plaintiff. *See* Docket No. 19, Ex. 2.  Plaintiff's counsel further requested that Defendant defend Plaintiff against the Fox's claim and to re-evaluate the determination that the "Open

Structure 'Water' Damage" exclusion applied to the claim. *Id*. Although the August 6 letter indicates that the Fox's demand was attached, no attachment was included with the copy submitted to the Court. *Id*. It is unknown from the record before the Court whether Defendant or Golden State responded to counsel's August 6 letter, or whether Defendant re-evaluated Plaintiff's request for a defense considering the Fox's demand.

As of May 30, 2024, Plaintiff had a commercial general liability policy with Defendant ("Policy"). *See* Docket No. 16, Undisputed Material Facts ¶ 3. The Policy provides that Defendant is legally obligated to pay "'property damage' to which this insurance applies" and has "the right and duty to defend [insured] . . . against any 'suit' seeking 'damages' to which this insurance applies. . . ." *See* Docket No. 16, Ex. 1 at § I(1)(a). Although the original Policy had an "Open Structure 'Water' Damage" exclusion, this exclusion was amended on May 17, 2024. *Id*., § I(2)(r) & p. 59. As amended, the Open Structure "Water" Damage exclusion applies to:

> [a]ny "claim" for "bodily injury" or "property damage" to any building or structure or to any property within such building or structure that arises out of, results from, is caused by, contributed to, alleged to be, or in any way involving, in whole or in part, "water", any liquid, rain, hail, sleet or snow entering such building or structure from any area of the structure *where the exterior or interior waterproof protective covering has been removed* for any reason, in whole or in part, regardless of the manner of removal, or has not been installed or has been installed incompletely or installed or secured inadequately or improperly. However, this exclusion shall *not* apply if a *temporary covering*, consisting of a tarpaulin, waterproof canvas, or similar reinforced waterproof covering has been securely installed over any such opening or area to protect against weather-water related damage.

*Id*., p. 59 (emphasis added).

On October 11, 2024, the Fox's filed a petition in Pittsburg County, Oklahoma in the case styled and numbered *Timothy W. Fox and Misty Fox v. In & Out Construction & Remodeling, LLC*, Case No. CJ-2024-242 ("Fox Litigation"). The Fox Litigation asserts claims for breach of contract and negligence resulting from the May 30, 2024 incident as well as a June 3, 2024 incident in which wind blew off the tarp covering the roof during a rain storm that resulted in water entering the Fox's home. *See* Docket No. 16, Ex. 2 at ¶¶ 7-10. It is unknown from the record before the Court whether Plaintiff made any additional demand for defense after the Fox Litigation was initiated.

On December 2, 2024, In & Out answered the Fox Litigation and asserted a third-party claim against Third Coast Insurance Company. *See* Docket No. 2, Ex. 4. Subsequently, In & Out's third-party claim was severed from the Fox Litigation and assigned a new case number, CJ-2025-288. Afterwards, Defendant Third Coast Insurance Company removed the action to this Court. Plaintiff asserts claims against Defendant for breaching its duty of good faith and fair dealing and engaging in bad faith insurance practices in refusing to defend Plaintiff against the Fox Litigation and refusing to indemnify Plaintiff from the claims in the Fox Litigation.[1]

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient

---

[1] At this time, the Fox Litigation is ongoing, and no judgment has been rendered. *See* Docket No. 16, p. 1.

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## III.    ANALYSIS

Defendant moves for summary judgment because it is undisputed that it had no duty to defend Plaintiff under the Open Structure "Water" Damage exclusion and no duty to indemnify because no settlement or judgement has been rendered in the Fox Litigation. *See* Docket No. 16, p. 1.  Defendant further seeks judgment that it acted reasonably and in good faith and denying punitive damages.  *Id*., pp. 6-8.

### A.  Duty to Defend

Defendant argues it is undisputed it has no duty to Defend Plaintiff in the Fox Litigation because there is no potential of liability under the plain and unambiguous language of the Policy's Open Structure "Water" Damage exclusion.  *Id*.  Specifically, Defendant argues it is undisputed that on May 30, 2024, Plaintiff removed a portion of the Fox's roof, did not cover it and rainwater entered through the uncovered roof causing the damage alleged in the Fox Litigation.  *Id*., p.5.  Plaintiff argues Defendant breached its duty to defend because Defendant was aware of its claim, the Fox's demand and the Fox

5

Litigation. *See* Docket No. 19, pp. 8-9. Additionally, Plaintiff argues the felt underlayment constitutes a "water proof covering" as that term is used in the Policy exclusion. *Id*., pp. 9-10. As a result, Plaintiff argues Defendant possessed information giving rise to potential for coverage. *Id*. Plaintiff alternatively argues that the Policy exclusion language is ambiguous as to what constitutes "water proof covering" and, coupled with Plaintiff's reasonable expectation of coverage, such language should be interpreted in its favor. *Id*.

As the parties agree, under Oklahoma law, an insurance policy is a contract and is interpreted accordingly. *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302 (Okla. 1996). Courts may not rewrite the terms of the insurance policy and must give effect to all the policy's provisions. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). If the terms of an insurance policy are clear and unambiguous, then those terms will govern. *Id*. If the terms are ambiguous, meaning they are "susceptible to two constructions," then the terms will be "interpreted . . . most favorably to the insured and against the insurance carrier." *Id*. at 377. In doing so, however, "neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract." *Id*. at 376. Determining whether an insurance contract is ambiguous and interpreting the terms of a contract are tasks for the court. *Id*.

"Commercial insurance policies 'contain[ ] two basic duties—the duty to defend and the duty to indemnify its insured.'" *Ohio Sec. Ins. Co. v. B&B Heat & Air, Inc.*, 642 F.Supp.3d 1282, 1288 (N.D. Okla. 2022) (quoting *First Bank of Turley*, 928 P.2d at 302-

03). "Under Oklahoma law, the duty to defend is distinct from and broader than the duty to indemnify." *Automax Hyundai S. L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013). "[A]n insurer has a duty to defend if the facts raise the mere 'potential of liability.'" *Id*. at 805 (citing *First Bank of Turley*, 928 P.2d at 303). "To have the 'potential of liability,' the 'complaint [must] state a cause of action that gives rise to the possibility of a recovery under the policy; there need not be a probability of recovery.'" *Idg, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 920 (10th Cir. 2001) (quoting 7C Appleman, Insurance Law & Practice § 4683.01 at 67 (Berdal ed. 1979)). Therefore, the duty to defend is determined based on the "information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." *Ohio Sec. Ins. Co.*, 642 F.Supp.3d at 1288 (quoting *First Bank of Turley*, 928 P.2d at 303-04). If the duty to defend is triggered, then an insurer is required to defend its insured against all claims in a lawsuit. *Id*. (citing *Automax*, 720 F.3d at 806). However, an insurer's duty to indemnify is limited to "claims falling within the policy's scope." *Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809, 816 (10th Cir. 2008). "An insurer who disputes the insured's demand to defend has three options. It can (1) seek declaratory relief that would define the insurer's rights and obligations; (2) defend the insured under a reservation of rights, or (3) refuse to take any action at the peril of being later found in breach of its duty to defend." *First Bank of Turley*, 928 P.2d at 304-05 (citations omitted).

The Court first finds that the phrase "waterproof protective covering" as used in the Policy's Open Structure Water Damage exclusion is not ambiguous. Although Plaintiff

7

argues in a conclusory manner that this phrase is ambiguous, it does not set forth how it is ambiguous or what other reasonably meanings it could have. Instead, Plaintiff simply asserts that the felt underlayment constitutes a waterproof protective covering. *See* Docket No. 19, pp. 9-10. Presumably, Plaintiff is arguing that because the felt underlayment was a waterproof protective covering that had not been removed, the Open Structure "Water" Damage exclusion did not apply. Not only does Plaintiff not offer any authority for such a construction, but it implies that the shingle layer would be unnecessary – a position Plaintiff does not appear to take since it came back later and finished re-roofing the Fox's home with shingles. Furthermore, the Open Structure "Water" Damage exclusion states it applies when the waterproof protective covering is removed "in whole or in part[.]" *See* Docket No. 16, Ex. 1 at p. 59. Plaintiff does not challenge that shingles are a waterproof protective covering under the Policy exclusion and it is undisputed that the shingles were removed from the back half of the Fox's roof. Thus, because the shingles were removed, the waterproof protective covering was removed at least in part. As a result, under the plain and unambiguous meaning of the phrase "waterproof protective covering" as used in the Policy, the exclusion applies. To find any ambiguity or different meaning would be to impermissibly create a "forced []or strained construction" and would take the phrase "out of context" to reach Plaintiff's desired outcome. *Dodson*, 812 P.2d at 377.

Plaintiff also appears argue that the felt underlayment is both a waterproof protective covering and a "temporary covering, consisting of a tarpaulin, waterproof canvas or similar reinforced waterproof covering installed." *Id*., p. 4. Given that Plaintiff acknowledges the felt underlayment was already on the roof and was simply not removed

along with the shingles, it does not offer any explanation how such felt covering can be both a "temporary covering" and a permanent covering. *See* Docket No. 16, Ex. 1 at p. 59. Indeed, any reasonable reading of the exception to the Open Structure "Water" Damage exclusion is that a temporary covering is intended to prevent water intrusion when the permanent waterproof protective covering, such as the shingles and/or vents, has been removed. This is precisely what happened on May 30, 2024.

Second, even if there were some ambiguity as to whether the felt underlayment constitutes a waterproof protective covering under the exclusion, it is undisputed that, at a minimum, rain water intruded into the Fox's home through the loosened or removed vents, which were not covered by the felt underlayment or any temporary protective covering such as a tarp. Mr. Gonzales testified that, although he did not think water intruded through the felt underlayment, water did intrude through the open vents that had not been covered with any temporary covering. Mr. Gonzalez's testimony, which is generally consistent with the facts set forth in Golden State's denial, is sufficient undisputed evidence to support the application of the Open Structure "Water" Damage exclusion to the May 30, 2024 incident.[2]

Third, Plaintiff's "reasonable expectation" argument fails because Defendant's duty to indemnify is limited to "claims falling within the policy's scope." *Utica Mut. Ins. Co.*

---

[2] Mr. Gonzales contradicted the Golden State report in that he testified the felt underlayment covered the ridge cap and should have stopped any rain intrusion, *see* Docket No. 16, Ex. 5, p. 22, lns. 15-22, whereas Golden State's report stated there was a 6" gap at the roof's ridge, *Id.*, Ex. 6. This dispute, however, is not sufficient to change the outcome because Mr. Gonzales admits water came through the uncovered loosened or removed vents.

*v. Voyles*, 277 F. App'x at 816. As noted above, it is undisputed that the of Policy's Open Structure "Water" Damage exclusion applies to the water intrusion on May 30, 2024. Thus, there is no reasonable expectation of coverage under the undisputed facts present here.

Fourth, Plaintiff argues that Mr. O'Dea and/or Golden State were not actually independent, or that Mr. O'Dea is not an expert in adjusting or his investigation was inadequate. *See* Docket No. 19, p. 5. Plaintiff does not identify any authority for its argument as to Mr. O'Dea's required expertise or anything specifically deficient with Mr. O'Dea's investigation, and nothing in Mr. O'Dea's itemized invoice supports such a conclusion. For example, Mr. O'Dea met with Mrs. Fox and interviewed Mr. Gonzalez to get his version of events to prepare his report. *Id*., Ex. 3. Although Plaintiff references its denials in its answer in the Fox Litigation, it does not specifically offer any evidence challenging any statement in the "Relevant Facts" in Golden State's denial. Indeed, this statement of facts is generally consistent with Mr. Gonzalez deposition testimony. *Compare* Docket No. 16, Ex. 4, p. 23, ln. 5 – p. 24, ln. 5 with Ex. 6. Thus, these issues do not create a disputed fact regarding the application of the Policy's Open Structure "Water" Damage exclusion.

Based on the plain and unambiguous language of the Policy's Open Structure "Water" Damage exclusion, there is no possibility of coverage related to May 30, 2024 incident.[3] Thus, it is undisputed that Defendant did not breach the Policy by declining to defend Plaintiff in the Fox Litigation.

---

[3] Because neither party addresses the implications of the Fox's allegation that there was a separate water intrusion incident on June 3, 2024, that caused additional damage to their home, s*ee* Docket

## B. *Defendant Acted Reasonably and in Good Faith*

Defendant argues it acted reasonably and in good faith because its denial of defense was properly based on the Policy's Open Structure "Water" Damage exclusion or on a legitimate coverage dispute with Plaintiff.  Plaintiff, although conceding that indemnity is not yet ripe because of the status of the Fox Litigation, argues that Defendant was obligated to defend Plaintiff because of its conclusory assertion that there is no legitimate dispute that coverage was in effect and it had a reasonable expectation of such coverage.  *See* Docket No. 19, pp. 8, 10-12.

"The essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct . . . and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.'"  *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).  "A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason

---

No. 16, Ex. 2, ¶ 10, the Court declines to do so.  *See*, *e.g.*, *Jeter v. Wild West Gas, LLC*, 2025 WL 1819241, at *1 (N.D. Okla. July 1, 2025) (The Court will not assume the role of Plaintiff's advocate, create arguments on Plaintiff's behalf, or search the record for evidence not cited by Plaintiff that would support its claims); *Tate v. Statco Engineering and Fabricators, Inc.*, 2013 WL 6185476, n. 4 (E.D. Okla. Nov. 25, 2013) ("[T]he parties are reminded that the Court has no duty to search the record in an attempt to locate the facts necessary to validate unsupported contentions."); *Murphy v. City of Tulsa*, 295 F. Supp. 3d 1221, 1230 (N.D. Okla. 2018) ("The court will not 'search[ ] through the record on plaintiff's behalf . . . to compile the relevant facts.") (quoting *Stallings v. Werner Enterps., Inc.*, 598 F. Supp. 2d 1203, 1210 (D. Kan. 2009)).

for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing. *Id*. at 1093-94 (citing *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987)).

As noted above, the "duty to defend is distinct from and broader than the duty to indemnify" and "an insurer has a duty to defend if the facts raise the mere 'potential of liability.'" *Automax*, 720 F.3d at 804-05 (citing *First Bank of Turley*, 928 P.2d at 303). Thus, contrary to Defendant's argument, a legitimate coverage dispute may not protect it from failing to defend its insured. *See First Bank of Turley*, 928 P.2d at 304-05. However, because the Court finds that there is no possibility of coverage related to the May 30, 2024 incident under the Policy's Open Structure "Water" Damage exclusion, it is undisputed that Defendant acted reasonably and in good faith in denying Plaintiff's defense in the Fox Litigation.

### C.  *Punitive Damages*

Defendant argues it is undisputed that it did not act with reckless disregard towards Plaintiff in denying its defense in the Fox Litigation and, thus, punitive damages are not available. *See* Docket No. 16, p. 8. Plaintiff responds that summary judgment on punitive damages is premature because discovery is incomplete and there are fact questions whether Defendant acted with reckless disregard. *See* Docket No. 19, p. 13.

"Under Oklahoma law, punitive damages may be awarded in addition to actual or compensatory damages only upon proof that a defendant 'has been guilty of conduct evincing a wanton or reckless disregard for the rights of another. . . .'" *Willis v. Midland*

*Risk Ins. Co.*, 43 F.3d 607, 615 (10th Cir. 1994) (quoting 23 Okla. Stat. § 9(A) (1991)[4]). The undisputed evidence before the Court is that Defendant acted reasonably and in good faith in denying a defense related to the May 30, 2024 incident and, therefore, Defendant did not act with reckless disregard to the rights of Plaintiff.  Plaintiff fails to identify what additional discovery would show reckless disregard.  Moreover, to the extent Plaintiff asserts additional discovery is needed on the punitive damages issue, it failed to follow Fed. R. Civ. P. 56(d) to justify deferring a decision or seeking additional time for any discovery to respond to Defendant's motion.  Thus, Plaintiff is not entitled to punitive damages, and judgment is entered for Defendant on this issue.

### CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED that Defendant's Motion for Summary Judgment and Brief in Support [Docket No.16] be GRANTED.

IT IS SO ORDERED this 24th day of June 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] 23 Okla Stat. 23.1(B)(2) now provides that "[w]here the jury finds by clear and convincing evidence that . . . An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages. . . ."